IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| GEORGE W. FORTNER, JR., | CASE NO. 1:04-cv-5411 TAG |
|---|---|
| Plaintiff, | MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION |
| vs. | ORDER DIRECTING THE CLERK TO ENTER JUDGMENT IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff George W. Fortner, Jr. ("claimant" or "plaintiff") seeks judicial review of an administrative decision denying his claim for disability benefits under the Social Security Act ("Act"). Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). Claimant filed his complaint on March 11, 2004, and his opening brief on December 3, 2004. The Commissioner filed her opposition to the appeal on February 18, 2005. Claimant filed a reply brief on February 24, 2005.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed before a United States Magistrate Judge, and, by an order dated August 11, 2004, this action was assigned to the United States Magistrate Judge for all further proceedings.

///

## JURISDICTION

On December 13, 2000, claimant filed an application for Supplemental Security Income ("SSI") benefits, alleging disability since December 1, 2000, due to loss of his right eye, inability to concentrate, pain in his eye and headaches. (Administrative Record ("AR") 68-70, 79). The application was denied initially and on reconsideration. On February 13, 2003, claimant appeared before Administrative Law Judge ("ALJ") Richard Goodwin, at which time he heard testimony solely from claimant. (AR 25-39). On June 12, 2003, the ALJ issued a decision finding that claimant was not disabled. (AR 14-19). The Appeals Council denied a request for review on January 16, 2004. (AR 4-6). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both claimant and the Commissioner and will only be summarized here. Claimant was born on November 9, 1972, making him 30 years old on the date of the ALJ's decision. (AR 68, 19). At the administrative hearing held on February 13, 2003, claimant stated that he was 5' 7" tall, weighed about 200 pounds, was close to completing his GED and lived with a girlfriend who supported the couple through her employment. (AR 28-29). He testified that he last worked in 1998 doing in-home care and, prior to that job, he worked as a janitor. (AR 29). He indicated that he had lost his right eye, and, besides the vision loss and irritation associated with his right eye loss, he has headaches, neck pain and emotional problems which prevent him from working. (AR 29-30).

Claimant testified that he has had problems with the fitting of a prosthetic device in his right eye. (AR 30-31). He also indicated that he has daily, periodic pain in his right eye. (AR 31). For the pain, claimant puts drops in his eye and takes pain medication. (AR 32). However, he stated that the drops and pain medication did not help or take the pain completely away. (AR 32). Claimant testified that to alleviate the pain, he lays down and applies pressure to the area of his head where the pain is located and this tends to take away some of the pain. (AR 32-33). With regards to his vision loss, claimant indicated that he trips and constantly runs into things on his right side which are out of

his line of vision. (AR 33-34). He testified that he also has migraine headaches for which he takes over-the-counter medication and described feeling depressed "all the time." (AR 34-35). He indicated he sometimes feels like he does not want to live and has crying spells two to three times a week. (AR 35). Claimant stated that he could focus or concentrate for 15 minutes at a time, but tends to get side tracked by a feeling that people are looking at him and seeing that he has "a disablement." (AR 36).

He testified he spends a typical day sitting inside, playing cards, and "Just not, not too much of doing anything." (AR 37). He indicated he does not drive very often and no longer helps with the cooking, cleaning or grocery shopping. (AR 37).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that claimant is not only unable to do his previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed

impairments, claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents claimant from performing work he has performed in the past. If claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See, Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See, Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting* Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  Richardson, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at step one that claimant has not engaged in substantial gainful activity since his alleged onset date, December 1, 2000.  (AR 14).  At step two, the ALJ determined that claimant has the severe impairments of right eye blindness, status post prosthesis, and depression, but that he does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments.  (AR 14).  The ALJ also noted that claimant has neck pain and headaches, non-severe impairments which only have minimal effects, if any, on his ability to work.  (AR 14). The ALJ found that claimant's allegations were not supported by the evidence of record, he presented himself as being much worse off than that which is contained in the record, and, therefore, his allegations regarding his limitations were not totally credible or fully supported.  (AR 15-18).

The ALJ concluded that claimant has the residual functional capacity to perform simple repetitive tasks and should avoid work requiring binocular vision and concentrated exposure to hazardous machinery and heights.  (AR 17).  The ALJ indicated that claimant has no past relevant work.  (AR 17).  However, using Medical Vocational Guideline ("grid") rule 204.00, the ALJ found

1  that, based on claimant's ability to perform work at all exertional levels, the fact that his non-
2  exertional limitations did not significantly compromise his ability to perform work at all exertional
3  levels and given his age, education, and past relevant work experience, claimant could perform a
4  significant number of jobs available in the national economy.  (AR 17).  Accordingly, the ALJ
5  determined at step five of the sequential evaluation process that claimant was not disabled within the
6  meaning of the Social Security Act.  (AR 17-19).

## ISSUES

Claimant contends that the Commissioner erred as a matter of law.  Specifically, he argues that:

1. Since claimant has documented non-exertional impairments which significantly diminish his ability to perform work, the ALJ erred by failing to call a vocational expert in order to support his step five finding; and

2. The ALJ's residual functional capacity determination is unsupported by the evidence of record.

This court must uphold the Commissioner's determination that claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## **DISCUSSION**

### A. Residual Functional Capacity Assessment

Residual functional capacity ("RFC") is defined as "what an individual can still do despite his or her limitations."  SSR 96-8p.  Claimant's RFC is not a medical issue, rather it is an administrative finding, dispositive of the case, which is reserved to the Commissioner, and, by delegation of authority, to the ALJ.  SSR 96-5p.  It is thus the ALJ's responsibility to make a RFC determination.  However, in making his finding, the ALJ must consider the whole record and explain how he weighs the medical evidence and testimony.  SSR 96-8p.

The ALJ found that claimant has the RFC to perform work at all exertional levels while being limited to simple repetitive tasks with the avoidance of work requiring binocular vision and concentrated exposure to hazardous machinery and heights.  (AR 17).  Claimant contends that the

1  ALJ's RFC determination is unsupported by the evidence of record because all physicians offering
2  an opinion on work-related limitations believed claimant to be more limited than as determined by
3  the ALJ, and the ALJ did not articulate good reasons to reject their opinions.  (Court Doc. 14, pp. 9-
4  10).  The undersigned disagrees.

5  In support of claimant's argument that the ALJ's RFC determination is erroneous, he asserts
6  that the ALJ erred by rejecting the opinions of two examining medical professionals to find that
7  claimant was capable of performing work at all exertional levels with no limitation regarding
8  claimant's ability to relate to others.  (Court Doc. 14, p. 10).  Claimant argues that the ALJ
9  specifically erred by ignoring the opinion of examining psychiatrist, Ramon Raypon, M.D., that
10 claimant is limited in relating to others and the opinion of examining internist, Gurmej Dhillon, M.D.,
11 that claimant is limited to lifting and carrying no greater than 25 to 30 pounds.  (Court Doc. 14, p.
12 10).

13 The courts distinguish among the opinions of three types of physicians:  treating physicians,
14 physicians who examine but do not treat the claimant (examining physicians) and those who neither
15 examine nor treat the claimant (nonexamining physicians).  Lester v. Chater, 81 F.3d 821, 839 (9th
16 Cir. 1996).  A treating physician's opinion is given special weight because of his familiarity with the
17 claimant and his physical condition.  Fair v. Bowen, 885 F.2d 597, 604-05 (9th Cir. 1989).  Thus,
18 more weight is given to a treating physician than an examining physician.  Lester, 81 F.3d at 830.
19 However, the treating physician's opinion is not "necessarily conclusive as to either a physical
20 condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 7474, 751 (9th Cir.
21 1989) (citations omitted).

22 The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself
23 constitute substantial evidence that justifies the rejection of the opinion of either an examining
24 physician or a treating physician."  Lester, 81 F.3d at 830.  Rather, an ALJ's decision to reject the
25 opinion of a treating or examining physician, may be *based in part* on the testimony of a
26 nonexamining medical advisor.  Magallanes, 881 F.2d at 751-55; Andrews v. Shalala, 53 F.3d 1035,
27 1043 (9th Cir. 1995).  The ALJ must also have other evidence to support the decision such as
28 laboratory test results, contrary reports from examining physicians, and testimony from the claimant

that was inconsistent with the physician's opinion. Magallanes, 881 F.2d at 751-52; Andrews, 53 F.3d 1042-43. Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence. Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).

**1. Mental Restrictions**

Dr. Raypon performed a psychiatric evaluation of claimant on March 10, 2001. (AR 150-152). Claimant reported to Dr. Raypon that he is usually embarrassed about his appearance and conscious that others are looking at him. (AR 150). Claimant also reported feeling sad and restrictions of social contact. (AR 150). Dr. Raypon noted that claimant reported episodes of depressive feelings due to his living situation and restrictions of social functioning. (AR 151). Dr. Raypon thus found "some evidence of restrictions of daily activities due to report of physical problems and difficulties in maintaining social functioning due to problems relating with others." (AR 151-152).

Dr. Raypon diagnosed claimant with posttraumatic stress disorder, depressive disorder, not otherwise specified, gunshot injuries to right eye, buttock and leg, right eye prosthesis, and traumatic injuries, chronic physical symptoms and gave claimant a global assessment of functioning ("GAF") score of 55.[1] (AR 152). Dr. Raypon determined that claimant has the ability to sustain concentration, persistence and pace for short periods of time, he has the ability to understand, carry out and remember simple directions and his ability to respond appropriately to work activity was impaired due to evidence of depression and physical problems. (AR 152).

As indicated by the Commissioner, Dr. Raypon found that claimant had problems relating to others based on claimant's "report" of such difficulties. (Court Doc. 19, p. 9; AR 151-152). Accordingly, the ALJ was free to discount this finding of social difficulty, because the ALJ found

///

///

---

[1] A GAF of 60-51 reflects: Moderate symptoms or moderate difficulty in social, occupational, or school functioning. See, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

1  claimant to be not totally credible in this case.² (AR 18).  See, e.g., Tonapetyan v. Halter, 242 F.3d
2  1144, 1149 (9th Cir. 2001) (the ALJ properly rejected a physician's opinion which was premised on a
3  claimant's subjective complaints); Andrews v. Shalala, 53 F.3d 1035, 1050 (9th Cir. 1995) ("an ALJ
4  may properly consider a claimant's lack of credibility and the extent to which his physician's opinion
5  is influence by the claimant's own information").

6       In addition, state agency reviewing physicians noted on a mental residual functional capacity
7  assessment form that claimant was not significantly limited in 17 out of 20 areas of functioning and
8  moderately limited only in his abilities to understand, remember and carry out detailed instructions.
9  (AR 167-169).  The reviewing physicians noted that claimant was not significantly limited to
10 moderately limited with his ability to interact appropriately with the general public.  (AR 168).  The
11 state agency physicians also filled out a psychiatric review technique form noting that claimant had
12 mild restrictions of activities of daily living, mild to moderate difficulties in maintaining social
13 functioning, and mild difficulties in maintaining concentration, persistence or pace.  (AR 170-176).
14 The ALJ also noted that, with regard to social functioning, in a Daily Activities Questionnaire dated
15 March 8, 2001, "claimant reported that he went to church weekly and sometimes shopped with his
16 aunt.  He stated that he visited with a friend on the phone weekly."  (AR 16, 99-100).

17      The ALJ did not err by discounting Dr. Raypon's opinion that claimant would have some
18 restrictions in social functioning.  Dr. Raypon's opinion in this regard is based on claimant's report of
19 such difficulties, and the ALJ found that claimant's subjective complaints were not totally credible.
20 Moreover, the evidence of record demonstrates that claimant was fairly active and his ability to
21 interact with others was not significantly limited.

22     **2. Physical Restrictions**

23     Dr. Dhillon performed a comprehensive internal medicine examination of claimant on April
24 15, 2003.  (AR 207-212).  Dr. Dhillon noted that claimant was a victim of a 1994 drive by shooting
25 and sustained a gunshot wound to his right eye.  (AR 207).  Claimant reported pain in his right eye,
26 headaches, neck pain, difficulty sleeping, bumping into things, difficulty concentrating and focusing

---

28     ²Claimant does not contest the ALJ's credibility finding in this case.

9

and problems with depth perception and driving a car. (AR 207). It was noted that claimant presented feeling "very depressed," because his one-year old son died the night previous to the examination with Dr. Dhillon. (AR 207). However, claimant had no history of past depression and was taking no medication for depression. (AR 207).

Dr. Dhillon indicated that claimant was well-built and able to get off the chair and transfer to the examination table without any problem. (AR 211). The examination revealed no abnormality of claimant's extremities. (AR 209-211). Dr. Dhillon diagnosed claimant with right eye blindness, status post prosthesis, and depression. (AR 211). He determined that claimant had right eye blindness and possibly had a problem with depth perception when driving, but that claimant was able to walk around fairly well and "not hit into the corners." (AR 212). He noted that claimant was able to walk around the hallway without any difficulty. (AR 212). Dr. Dhillon opined that claimant had no trouble pushing or pulling, he could stand for four to six hours out of eight, he could sit four to six hours out of eight, he could lift 25 to 30 pounds and could walk without restriction. (AR 212).

Dr. Dhillon diagnosed only right eye blindness and depression, impairments supported by the results of his examination. Although Dr. Dhillon also limited claimant's ability to stand, sit and lift, his examination findings did not support such limitations, nor did he explain why these limitations were present. With respect to Dr. Dhillon's finding that claimant "can lift 25-30 pounds" (AR 212), the record is also devoid of any limitations as to claimant's ability to lift and carry. State agency reviewing physicians noted on a physical residual functional capacity assessment form that claimant had no established exertional limitations. (AR 158). The reviewing physicians found that claimant's only limitations were due to his right eye blindness which limited his depth perception and field of vision abilities. (AR 160). They concluded that his visual limitations also restricted him to avoiding concentrated exposure to hazards (machinery, heights, etc.). (AR 161).

Based on the foregoing, the ALJ did not err by disregarding Dr. Dhillon's opinion that claimant would have some exertional limitations. Dr. Dhillon's exertional restrictions are unexplained and unaccounted for in his medical report. Moreover, the evidence of record, including the report from state agency reviewing physicians, does not support a finding that claimant has exertional limitations.

The ALJ provided specific, legitimate rationale for discounting the finding of Dr. Raypon, that claimant is limited in relating to others, and the opinion of Dr. Dhillon, that claimant is limited to lifting and carrying no greater than 25 to 30 pounds. The ALJ appropriately concluded that claimant retains the RFC to perform simple, repetitive work at any exertional level with only being restricted from the performance of work requiring binocular vision and concentrated exposure to hazardous machinery and heights. (AR 17). The ALJ's RFC determination in this case was based on substantial evidence and was entirely accurate.

**B. Vocational Expert Testimony**

Claimant asserts that the ALJ erred by failing to elicit testimony from a vocational expert in this case. (Court Doc. 14, pp. 6-9). Claimant argues that, having found that claimant had the severe impairments of right eye blindness and depression, the ALJ was required to obtain vocational expert testimony to sustain his step five finding. (Court Doc. 14, pp. 6-7).

After a claimant has established a prima facie case of disability by demonstrating he cannot return to his former employment, the burden shifts to the ALJ to identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite his identified limitations. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). The ALJ can satisfy this burden by either (1) applying the grids or (2) taking the testimony of a vocational expert. Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988).

The grids are an administrative tool the Commissioner may rely on when considering claimants with substantially uniform levels of impairment. Burkhart, 856 F.2d at 1340 (*citing* Derosiers v. Secretary of Health and Human Serv., 846 F.2d 573, 578 (9th Cir. 1988). However, the use of the grids is not always proper. If a claimant has non-exertional limitations[3] that significantly limit his range of work, the use of the grids in determining disability is inappropriate. Bates v. Sullivan, 894 F.2d 1059 (9th Cir. 1990) *overruled on other grounds* Bunnell v. Sullivan, 947 F.2d 341, 342 (9th Cir. 1991). In such instances, a vocational expert must be called to identify jobs that

///

---

[3] Nonexertional limitations are "all work-related limitations and restrictions that do not depend on an individual's physical strength." Soc. Sec. Rul. 96-8. See also 20 C.F.R. Pt. 416.969a; Derosiers, 846 F.2d at 579.

11

match the abilities of the claimant, given his limitations.  See, e.g., Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  Nevertheless, if an ALJ determines that a claimant's non-exertional limitations do not significantly affect his ability to perform a full range of work, then use of the grids is appropriate.  Tacket v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).

The undersigned has found herein that the ALJ's RFC determination is without error.  Supra.  Nevertheless, the ALJ did conclude that claimant has limitations beyond exertional finding claimant restricted from performing more than simple, repetitive work, work requiring binocular vision, and work requiring concentrated exposure to hazardous machinery and heights.  (AR 17).  Although the ALJ did not apply the grids to dictate the result in this case, the ALJ used the grids as a framework to find that, based on claimant's RFC, age, education, and work experience, there were a significant number of jobs in the economy which claimant could perform despite his limitations.  (AR 17-18).  As noted above, if an ALJ determines that a claimant's non-exertional limitations do not significantly affect his ability to perform a full range of work, then use of the grids is appropriate.  Tacket, 180 F.3d at 1101.  The ALJ found that claimant's ability to perform work at all exertional levels was not significantly compromised by his non-exertional limitations.[4]  (AR 17).  Using grid rule 204.00 as a framework, the ALJ determined that, based on claimant's ability to perform work at all exertional levels, the fact that his non-exertional limitations did not significantly compromise his ability to perform work at all exertional levels, and given his age, education, and past relevant work experience, claimant could perform a significant number of jobs available in the national economy.  (AR 17-19).  20 C.F.R. pt. 404, subpt. P, app. 2, table 2, rule 204.00.  Thus, the ALJ concluded that a finding of not disabled was within the framework of Rule 204.00.  (AR 17-19).

Since the ALJ found that claimant could perform the physical and mental demands of the jobs administratively noticed under the grids, it was not necessary for him to call a vocational expert.  As noted above, if non-exertional limitations "significantly" affect a claimant's ability to perform work, then vocational expert testimony is required.  Bates, 894 F.2d at 1059.  However, because the ALJ in this case appropriately determined that claimant's non-exertional limitations did not "significantly

---

[4] The ALJ found that claimant is restricted to simple, repetitive tasks and should avoid work requiring binocular vision and concentrated exposure to hazardous machinery and heights.  (AR 17).

compromise" his ability to perform work, the use of the grids by the ALJ was entirely appropriate. Therefore, the undersigned concludes that the ALJ did not err by failing to elicit testimony from a vocational expert. The ALJ's use of the grids as a framework to find claimant not disabled was proper in this case.

## **CONCLUSION**

For the reasons outlined above, the undersigned finds no error in the ALJ's analysis. As such, the Commissioner's decision to deny claimant disability benefits is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security.

The clerk of this Court is DIRECTED to enter judgment as a matter of law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against claimant George W. Fortner, Jr.

IT IS SO ORDERED.

**Dated:   August 2, 2005**              /s/ Theresa A. Goldner
j6eb3d                                           UNITED STATES MAGISTRATE JUDGE